Filed 4/24/15  In re T.K. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re T.K. et al., Persons Coming Under the Juvenile Court Law. | |
| MENDOCINO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>Nicholas K.,<br><br>        Defendant and Appellant. | A142259<br><br>(Mendocino County Super. Ct. Nos. SCUK-JVSQ-14-16965, SCUK-JVSQ-14-16966) |

Six-year-old T.K. and his eight-year-old brother, N.K., were detained following a domestic violence incident between their mother (Mother) and her cohabitant boyfriend. Appellant Nicholas K. (Father) was the alleged father of both minors, and his whereabouts were unknown at the time of detention.  A Welfare and Institutions Code section 300[1] petition alleged Mother had endangered the children and Father had failed to provide support.  Father appeared, with counsel, at a contested jurisdictional hearing on an amended petition alleging he had endangered the safety and well-being of the minors as a result of prior domestic violence with Mother.  The court found the petition's allegations true as to both Mother and Father.  Father appeals.  We affirm.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

# I. BACKGROUND

We briefly review the underlying facts as to Mother, who is not a party to this appeal. On March 17, 2014, Mother was treated for a gunshot wound to the hand, and her live-in boyfriend was arrested for domestic violence. Both children were present at the time of the incident. A social worker interviewed N.K. separately from the Mother on the night of the incident. N.K. had heard Mother and her boyfriend arguing, and saw the boyfriend shoot Mother in the hand. N.K. had seen the boyfriend with firearms in the house often, and when Mother left the house after the shooting, the boyfriend went through the house collecting guns and ammunition. Mother claimed she and the boyfriend were fighting, and a loaded gun accidentally went off in her hand as she tried to remove a bullet from it. Police retrieved seven unsecured firearms and several packages of ammunition from the scene.

On March 19, 2014, a petition was filed by the Mendocino County Department of Social Services (Agency)[2] as to both children, alleging, inter alia, that Mother failed to adequately protect and supervise the minors and failed to keep the household free from domestic violence (§ 300, subd. (b)). Father's whereabouts were unknown at the time of filing, and the petition alleged he failed to provide support for the minors (§ 300, subd.(g)). Mother told the Agency that there was no contact order between Father and the children due to domestic violence, and Father had been out of contact with the children for some time.

Father first appeared in the action on April 16, 2014. He was declared the presumed father of both children and counsel was appointed to represent him. The Agency filed a second amended petition on April 29, 2014, adding an allegation that Father had endangered the children as a result of three separate domestic violence incidents with the children present.[3] An addendum to the jurisdictional report included copies of police reports from the incidents, each of which occurred in the State of

---

[2] Now known as the Mendocino County Health and Human Services Agency, Children & Family System of Care.

[3] The section 300, subdivision (g) nonsupport allegation was deleted.

Washington and resulted in a conviction. In December 2008, Father was reported to have pushed Mother down several times, grabbed her by the back of the neck, and threatened to kill her. Father allegedly possessed a knife during this attack. N.K. was present. In February 2010, Father was reported to have screamed profanity at Mother, called her names, and feigned a punch to her as she lay in bed. Father slammed Mother several times "very hard" with a pillow. Father claimed he had anger issues because he had run out of his depression medication. Both children were present in the home at the time. In August 2010, Father was witnessed by neighbors forcing his way into Mother's home. Mother told police that following an argument Father put her in a headlock, dragged her into the apartment, and struck her in the back with his fists. N.K., T.K., and two other children were present. At the time of the attack, Father had been served with protective orders prohibiting contact with Mother and both minors. On July 22, 2011, a five-year domestic violence no contact order was issued by the King County Superior Court in Washington prohibiting Father from contact with Mother, but permitting third party contact to facilitate visitation with N.K. and T.K. However, a June 19, 2012 dissolution judgment by the Mendocino County Superior Court gave Mother sole legal and physical custody, with no visitation to Father.

*The Jurisdictional Hearing*

A contested jurisdiction hearing was held on May 22, 2014. Father appeared with counsel. Mother testified that Father had been physically violent with her "a lot," including hitting, punching, choking and kicking, and that these attacks occurred in front of the minors.[4] Some of the incidents were reported to police, and others were not. Father testified, acknowledging the 2008 and 2010 domestic violence incidents. He denied having a current anger management problem, and testified about treatment he received to address his past domestic violence issues. He produced evidence of 36 completed sessions of a batterer's treatment program between October 2011and

---

[4] Father emphasizes that the court found Mother's testimony "suspect." The court's concern with Mother's credibility, however, focused on her continued insistence that the gunshot wound she suffered in the incident with her boyfriend was an accident.

3

July 2012, and evidence that his attitude and participation were "excellent" when he was in attendance. However, he relapsed with alcohol use in July 2012, was discharged from the batterer's program the following September for failing to attend weekly sessions, and did not complete the final nine sessions. Father said his probation officer told him to stop attending the domestic violence classes to focus on mental health issues, and the probation department had recently closed his case because everything was "done and finished." Father submitted evidence showing he had received a clinical mental health assessment and participated in four individual mental health therapy sessions in November and December 2012. On cross examination, Father admitted that one or both children had observed physical violence between him and Mother "maybe" twice, and altercations involving yelling and screaming on a weekly basis for a period of five years during his relationship with Mother. Father had not been arrested or charged with any domestic violence offenses since the last 2010 incident with Mother, and no incidents of domestic violence had been reported with his current girlfriend of two years.

Agency social worker Elizabeth Benson testified that she did not know of any domestic violence issues between Father and his current girlfriend. It was Benson's opinion that Father's domestic violence issues with Mother did not present a current risk of danger to the minors. Benson said N.K. had exhibited "some hesitancy" before his first meeting with Father, which she attributed to "what had happened in the past." After observing one in-person visitation and weekly telephone calls between the minors and Father, she had no concerns for their safety. She said the minors were "[e]xtremely delighted, comfortable" with Father during the in-person visit.

Father's counsel argued that evidence was insufficient to sustain the section 300, subdivision (b) allegation against Father, since there was no current risk of harm to the minors. Counsel also argued that Father had taken steps to correct his prior behavior. Counsel for Mother and the minors asked the court to sustain the allegation as to Father. Minors' counsel noted that witnesses to one of the 2010 domestic violence incidents had heard the children screaming during that incident. Minors' counsel also argued Father's current home had not been investigated, no one had spoken to the children currently

4

living with Father, and the past domestic violence was severe. The Agency "[stood] by [the social worker's] statement that she believes at this time there's no immediate threat from the father," but agreed the "severity of the incidents" in 2008 and 2010 "causes concern."

The court found the second amended petition's allegations true as to both Mother and Father, finding that numerous incidents of domestic violence between the parents with the children present had placed the children at substantial risk. The court found that the minors were "still at risk as a result of their parents['] multi-year history of domestic violence in their presence."

A June 2014 disposition report recommended family reunification services for both parents. The minors were placed with a nonrelative extended family member recommended by Mother. At the dispositional hearing on June 18, 2014, Father's counsel stipulated to out-of-home placement and family reunification services, pending the outcome of an expedited evaluation of Father's home situation. Father filed a timely notice of appeal from the jurisdictional and dispositional orders.

## II.  DISCUSSION

A.  *The Disposition Order*

We observe first that, while Father's appeal purports to be from both the jurisdictional and dispositional orders,[5] he identifies no error by the court in its disposition order and, in fact, stipulated to the order entered. Father presents no separate argument regarding the issue, and makes only a passing assertion that because the jurisdictional order is erroneous, "the dispositional findings and orders as to [Father] which followed, must be reversed." Father's stipulation to the dispositional order forfeits any objection to it. (*Steve J. v. Superior Court* (1995) 35 Cal.App.4th 798, 813.) Further, when an appellant fails to raise a point, or asserts it but fails to support it with reasoned

_____

[5] An appeal cannot be taken directly from a dependency court's jurisdictional order. The jurisdictional order is "appealable by way of a challenge to a dispositional order made subsequent to it. [Citation.]" (*Blanca P. v. Superior Court* (1996) 45 Cal.App.4th 1738, 1754.)

5

argument and citations to authority, we treat the point as waived. (*People v. Stanley* (1995) 10 Cal.4th 764, 793.) We therefore address only the jurisdictional findings.

B.      *No Justiciable Issue Raised*

Father contends that evidence is insufficient to support the court's jurisdictional finding as to him. The Agency argues that, because the jurisdictional findings as to Mother are uncontested, we would not reverse the juvenile court's jurisdictional finding even if Father's arguments were accepted. (See *In re I.A.* (2011) 201 Cal.App.4th 1484, 1489 (*I.A.*).) The Agency consequently asks us to dismiss this appeal for lack of a justiciable issue. Justiciability generally requires that an appeal "concern a present, concrete, and genuine dispute as to which the court can grant effective relief." (*Ibid.*)

The *I.A.* court considered circumstances similar to those presented here. The father challenged the sufficiency of evidence to support findings as to him based on his criminal history and history of domestic violence. (*I.A., supra*, 201 Cal.App.4th at p. 1487.) He did not challenge jurisdictional findings as to the mother, based on her substance abuse. Because dependency court jurisdictional findings are made with respect to the child and not the parents, our colleagues in Division One dismissed the appeal, finding that "any order we enter will have no practical impact on the pending dependency proceeding, thereby precluding a grant of effective relief. . . . [¶] . . . [¶] As a result of this focus on the child, it is necessary only for the court to find that one parent's conduct has created circumstances triggering section 300 for the court to assert jurisdiction over the child. [Citations.] . . . For jurisdictional purposes, it is irrelevant which parent created those circumstances." (*Id.* at pp. 1491–1492.) " '[A] minor is a dependent if the actions of either parent bring [him] within one of the statutory definitions . . . . [Citations.]' " (*In re X.S.* (2010) 190 Cal.App.4th 1154, 1161.)

Other courts have said discretion may be exercised to reach the merits of the other parent's jurisdictional challenge "in three situations: (1) the jurisdictional finding serves as the basis for dispositional orders that are also challenged on appeal; (2) the findings could be prejudicial to the appellant or could impact the current or any future dependency proceedings; and (3) the finding could have consequences for the appellant beyond

jurisdiction.  [Citation.]"  (*In re A.R.* (2014) 228 Cal.App.4th 1146, 1150; accord *In re J.C.*(2014) 233 Cal.App.4th 1, 3–4; *In re Quentin H.* (2014) 230 Cal.App.4th 608, 613 (*Quentin H.*); *In re Christopher M.* (2014) 228 Cal.App.4th 1310, 1316–1317 (*Christopher M.*); *In re Drake M.* (2012) 211 Cal.App.4th 754, 762–763 (*Drake M.*).)

Father suggests the last two factors apply here, and urges us to consider the merits of his appeal.  He contends the jurisdictional finding here "undoubtedly" would negatively affect him in his home state of Washington if a child welfare agency were to have any reason to investigate his current family there, although he does not suggest why this would necessarily be so.  Father also posits that the jurisdictional finding against him would have collateral estoppel effect in any subsequent proceeding in a family law case involving these parents, but ignores that this would be equally true for Mother.

In *Quentin H., Christopher M.*, and *Drake M.*, the reviewing courts each found that where the contested finding may exclude the parent as a placement option, an appellate court has discretion to consider the appeal.  (*Quentin H., supra,* 230 Cal.App.4th at p. 613; *Christopher M., supra,* 228 Cal.App.4th at pp. 1316–1317; *Drake M., supra,* 211 Cal.App.4th at pp. 762–763.)  In each instance, the court found that the distinction between being found an "offending" parent versus a "nonoffending" parent "may have far reaching implications with respect to future dependency proceedings in this case and father's parental rights."  (*Drake M.,* at p. 763; *Quentin H.,* at p. 613; *Christopher M.,* at p. 1317; see § 361.2, subd. (a) [governing placement of a dependent child with a noncustodial parent].)[6]  Acknowledging that the term "nonoffending" does not appear in the text of section 361.2, subdivision (a), the *Christopher M.* court noted that some courts had nevertheless recognized " 'an implicit

---

[6] "When a court orders removal of a child pursuant to Section 361, the court shall first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child.  If that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child. . . ."  (§ 361.2, subd. (a).)

7

nonoffending requirement in section 361.2.' " (*Christopher M.*, at p. 1317, citing *In re John M.* (2013) 217 Cal.App.4th 410, 421 & *In re Karla C.* (2010) 186 Cal.App.4th 1236, 1244–1245; see also *In re Isayah C.* (2004) 118 Cal.App.4th 684, 697 ["a nonoffending parent has a constitutionally protected interest in assuming physical custody, as well as a statutory right to do so, in the absence of clear and convincing evidence that the parent's choices will be 'detrimental to the safety, protection, or physical or emotional well-being of the child' "]; cf. *In re Nickolas T.* (2013) 217 Cal.App.4th 1492, 1504; *In re V.F.* (2007) 157 Cal.App.4th 962, 966.)[7] Even assuming that section 361.2, subdivision (a) does not include an implicit "nonoffending" requirement, the *Christopher M.* court found reason to consider the appeal's merits because a jurisdictional finding based on a noncustodial parent's conduct would unquestionably be a consideration in assessing detriment under section 361.2, subdivision (a) for custodial placement. (*Christopher M.*, at p. 1317.)

The considerations articulated in *Quentin H.*, *Christopher M.*, and *Drake M.*, would, however, suggest a review of the merits in virtually every case where a parent is not otherwise categorically precluded from custodial consideration. We do not find those considerations persuasive here. We seriously question whether Father could be considered "nonoffending" on this record, even in the absence of jurisdictional findings as to him. And the same underlying *behavior*, which Father largely admitted, would still be highly relevant to the question of detriment to the child which the court must assess before making a custodial placement under section 361.2, subdivision (a). (*In re Nickolas T., supra,* 217 Cal.App.4th at p. 1506, fn. 10.)

---

[7] In the instant case, the court expressed concern that Father might be a "nonoffending parent entitled to custody" in the absence of jurisdictional findings as to him. Father argues that this reflects a mistaken understanding of the requirements of section 361.2 by the court, that "necessarily affected the court's decision on the jurisdictional issue." Whether or not the court was correct, the court did not base its findings on section 361.2, and we do not credit Father's speculation that the court's view "necessarily" affected the court's evidentiary findings.

The contentions Father makes here are the same as those the *I.A.* court found to be " 'highly speculative' " (*I.A., supra,* 201 Cal.App.4th at pp. 1494–1495)—particularly since Father stipulated to the dispositional order and fails to show anything other than speculation that adverse legal or practical consequences, within or outside the dependency proceedings, could flow from the jurisdictional finding. (See *In re A.R., supra,* 228 Cal.App.4th at p. 1151.) Here the court ordered that Father receive reunification services, and Father has not been denied consideration for custodial placement. At the time of disposition, it was expressly contemplated that Father's home would be evaluated, and Father's counsel indicated that he would file a section 388 petition for modification in the event of a favorable recommendation. We find nothing here to indicate that the jurisdictional findings as to Father affected the dispositional order, and nothing other than speculation that those findings will have any effect on further proceedings. We therefore need not address the merits of Father's claim to affirm the jurisdictional order.

C.     *Jurisdictional Finding Supported by Substantial Evidence*

Even if we were to exercise our discretion to address the merits of Father's claim, we would find the court's jurisdictional order to be supported by substantial evidence. "The Department has the burden of proving by a preponderance of the evidence that the children are dependents of the court under section 300. (§ 355, subd. (a); [citation].) [¶] . . . 'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." [Citation.] "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court. [Citations.] ' "[T]he [appellate] court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence

9

. . . such that a reasonable trier of fact could find [that the order is appropriate].” ’ [Citation.]” [Citation.]’ [Citation.]” (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

"Section 300, subdivision (b) provides a basis for juvenile court jurisdiction if the child has suffered, or there is a substantial risk the child will suffer, serious physical harm or illness caused by the parent's inability to provide regular care for the child because of the parent's mental illness, developmental disability or substance abuse.  A jurisdictional finding under section 300, subdivision (b) requires:  ‘ “(1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) ‘serious physical harm or illness’ to the minor, or a ‘substantial risk’ of such harm or illness.” [Citation.]’ [Citations.]  The third element ‘effectively requires a showing that at the time of the jurisdictional hearing the child is at substantial risk of serious physical harm in the future . . . .’ [Citation.]” (*In re James R.* (2009) 176 Cal.App.4th 129, 135.)  “[D]omestic violence in the same household where children are living . . . is a failure to protect [the children] from the substantial risk of encountering the violence and suffering serious physical harm or illness from it.” (*In re Heather A.* (1996) 52 Cal.App.4th 183, 194.) “ ‘Both common sense and expert opinion’ . . . ‘indicate spousal abuse is detrimental to children.’ [Citations.]” (*In re Sylvia R.*(1997) 55 Cal.App.4th 559, 562.)

As the trial court found, there was ample evidence that Father (and Mother) subjected the minors to “numerous and rather severe incidents of domestic violence between 2008 and 2010.”  The only real question was whether there was evidence of a current risk of harm to the children in Father's care.  The Agency social worker opined that there was not.  The court, however, appeared less than convinced by the testimony, noting that the social worker “did a fairly minimal investigation about [Father's] current circumstances,” with a “brief conversation she had in the hallway of the courthouse with [Father's] current girlfriend,” and no investigation of Father's home or contact with the girlfriend's twin daughters who lived in Father's home.  Father had suffered a felony conviction as a consequence of violating a Washington domestic violence restraining order and, at the time of the jurisdictional hearing, was still subject to a domestic violence restraining order.  The court expressed concern about Father's minimization of the acts of

10

domestic violence with Mother. The court recognized that past violent behavior in a relationship "is a good predictor of future behavior and . . . the Court can consider that fact." (See *In re T.V* (2013) 217 Cal.App.4th 126, 133 ["[a]lthough 'the question under section 300 is whether circumstances *at the time of the hearing* subject the minor to the defined risk of harm' [citation], the court may nevertheless consider past events when determining whether a child presently needs the juvenile court's protection"]; *In re E.B.* (2010) 184 Cal.App.4th 568, 576 [" '[p]ast violent behavior in a relationship is "the best predictor of future violence" ' "].)

*In re Daisy H.* (2011) 192 Cal.App.4th 713, cited by Father, is distinguishable. The *Daisy H.* court held that a finding of current substantial risk of harm was not supported by evidence of a single incident of physical violence where the incident occurred several years prior to the dependency petition's filing, the parents had since separated, and no evidence had been presented that the children had been exposed to the violence. (*Id.* at p. 717.) The court here found that "because of the number of incidents, the severity of the incidents, the fact that [Mother and Father] both downplayed the incidents, that there were injuries, that there was failure to contact law enforcement, there was failure to comply with restraining orders, I find that on the totality of the circumstances that [the petition's section 300, subdivision (b) allegation as to Father] is jurisdictional because the children are still at risk as a result of their parents multi-year history of domestic violence in their presence."

Substantial evidence supports the court's jurisdictional findings.

## III. DISPOSITION

The jurisdictional and dispositional orders of the juvenile court are affirmed.

11

_____
BRUINIERS, J.


WE CONCUR:


_____
SIMONS, Acting P. J.


_____
NEEDHAM, J.